## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARLENE D. ACOSTA<br>345 W. 5th Street<br>Bloomsburg, PA 17815, | JURY TRIAL DEMANDED<br><br>CIVIL ACTION |
| *Plaintiff*, | |
| v. | CASE NO. |
| MIRACLE MOTOR'S INC. D/B/A J.D.<br>BYRIDER<br>2140 Sans Souci Parkway<br>Wilkes-Barre, PA 18706, | **COMPLAINT**<br><br>FILED ELECTRONICALLY |
| And | |
| CAR NOW ACCEPTANCE<br>CORPORATION D/B/A CNAC<br>12802 Hamilton Crossing Blvd.<br>Carmel, IN 46032, | |
| *Defendants.* | |

## COMPLAINT

### I. Introduction

1.      This is an action for actual damages, statutory damages, punitive damages, costs, and attorney's fees for violations of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.* (the "UTPCPL"), the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), the Pennsylvania Uniform Commercial Code, 13 Pa.C.S. § 9101, *et seq.* (the "UCC"), and for conversion.

## II.    Jurisdiction

2.    The foregoing paragraph is incorporated herein by reference.

3.    This action is brought pursuant to TILA, 15 U.S.C. § 1601, *et seq.* Specifically 15 U.S.C. § 1640(e) permits an action to be brought in any United States District Court. Additionally, jurisdiction is based upon 28 U.S.C. §§ 1331.

4.    Plaintiff invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367 to hear and decide claims arising under state law as the state law claims are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

5.    Venue is proper under 28 U.S.C. § 1391 in this Court because the conduct complained of occurred here and at least one defendant resides here.

## III.    Parties

6.    The foregoing paragraphs are incorporated herein by reference.

7.    Darlene D. Acosta (the "Plaintiff") is an adult individual presently residing at 345 W. 5th Street, Bloomsburg, Pennsylvania 17815.

8.    Miracle Motors, Inc. d/b/a J.D. Byrider ("J.D. Byrider") is a corporation with a place of business at 2140 Sans Souci Parkway, Wilkes-Barre, PA 18706.

9.     Car Now Acceptance Corporation d/b/a CNAC ("CNAC") is a corporation with a place of business at 12802 Hamilton Crossing Blvd. Carmel, IN 46032.

## IV.     Statement of Claim

10.     The foregoing paragraphs are incorporated herein by reference.

11.     At all relevant times, Jeffrey Swainbank and all other salespersons, franchisees, and employees of J.D. Byrider and CNAC were agents and servants of J.D. Byrider and/or CNAC and were acting within the scope of their authority or apparent authority.

12.     On November 16, 2016, Plaintiff purchased a vehicle from J.D. Byrider.

13.      The vehicle purchased was a 2008 Buick Lucerne, VIN 1G4HP57258U160040, (the "Vehicle").

14.     Plaintiff paid J.D. Byrider $1,400.00 as a down payment.

15.     Plaintiff financed the purchase of the Vehicle from J.D. Byrider on November 16, 2016 for a total sale price of $19,179.41. The Retail Installment Contract ("RISC") is attached as Exhibit A.[1] [2]

---

[1] Exhibit A represents the first page of the RISC. Plaintiff was not given the remainder of the RISC at the time of sale and is not in possession of the remaining pages. Defendants are in possession of the remaining pages of the RISC. Additionally, CNAC has refused to provide Plaintiff with a copy of the note for the Vehicle's financing in this case.

[2] Kelley Blue Book provides that the Vehicle would have a private party value of $6,024.00 if it was in the best condition possible. The Vehicle was clearly not in the excellent condition considering the damage and differing VINs.

16.    The RISC provides that the Annual Percentage Rate ("APR") for the vehicles financing is 19.452%, the finance charge was $5,681.71, the amount financed was $12,097.70, the total of payments would be $17,779.41, and that the total sale price would be $19,179.41 including Plaintiff's down payment of $1,400.00.

17.    Plaintiff was also given an AutoCheck Summary Report ("AutoCheck Report") that stated the Vehicle had no previous accident damage or any other type of damage. The AutoCheck Report is attached as Exhibit B.

18.    Notably, Plaintiff was not given the full AutoCheck report, just the summary report.

19.    The salespersons at J.D. Byrider also made representations to Plaintiff at and before the time of sale that the Vehicle had no previous damage and was otherwise a good vehicle.

20.    Specifically, Jeffery Swainbank told Plaintiff that the Vehicle was "all original and had undergone a front to back inspection."

21.    Jeffery Swainbank also stated that the Vehicle had no previous damage and no accidents as well.

22.    The Vehicle was also located in the showroom at J.D. Byrider as a prime vehicle.

4

23.    By placing the Vehicle in the showroom and informing consumers that the Vehicle was a prime vehicle, J.D. Byrider represented that the Vehicle was in superb condition and was otherwise free of any defects.

24.    On or about August 2017, Plaintiff realized that the Vehicle contained different vehicle identification numbers ("VINs").

25.    The fact that the Vehicle had different VINs was never disclosed by J.D. Byrider.

26.     Further, no one informed Plaintiff that the Vehicle had different VINs before she purchased the Vehicle.

27.    The VIN located on the driver's side door of the Vehicle is 1G4HD57256U235731.

28.    That VIN belonged to a 2006 Buick.

29.    The different VIN on the driver's side door is the result of the door being replaced.

30.    The driver's side door of the Vehicle was replaced because of accident damage.

31.    J.D. Byrider knew or should have known that the Vehicle had different VINs, and thus a diminished value, at or before the time of sale.

32.    On September 26, 2017, J.D. Byrider and/or CNAC repossessed the Vehicle after Plaintiff was one (1) day late on her payment.

33.    The repossession of the Vehicle after a payment was one (1) day late was not the customary practice between Plaintiff and Defendants in the past.

34.    J.D. Byrider and/or CNAC never or almost never repossess a vehicle when a payment is one (1) day late. This averment is likely to have factual support after a reasonable opportunity for discovery.

35.    J.D. Byrider and/or CNAC repossessed the Vehicle after only one (1) day of default because Plaintiff had sent a pre-suit demand letter, which informed J.D. Byrider of Plaintiff's intent to file this lawsuit if pre-suit settlement was not achieved.

36.    Plaintiff made her car payment on September 26, 2017 at roughly 10:00am.

37.    The Vehicle was repossessed around the same time that Plaintiff made her payment.

38.    At all relevant times, the individuals sent to repossess the Vehicle were the employees, servants, and/or agents of J.D. Byrider and/or CNAC and were acting within the scope of their authority or apparent authority.

39.    Mark, the franchisee for J.D. Byrider, spoke to Plaintiff via telephone on September 26, 2017.

40.    During this phone call, Mark informed Plaintiff that the Vehicle had been repossessed because he received the pre-suit demand letter.

41.    Mark also stated that he erroneously believed that the pre-suit demand letter was Plaintiff breaching the contract to purchase the Vehicle, which is why he had the Vehicle repossessed.

42.    Mark was very rude to Plaintiff during this phone call and threatened Plaintiff by stating she would have to pay for his attorney's fees incurred because of the pre-suit demand letter, lawsuit, and/or repossession.

43.    Plaintiff was unable to pick up her sick children from school and daycare because of the repossession of the Vehicle.

*Count I – Violations of the UTPCPL*

44.    The foregoing paragraphs are incorporated herein by reference.

45.    J.D. Byrider's sale of the Vehicle to Plaintiff constitutes *trade and/or commerce* as those terms are defined by the UTPCPL, 73 P.S. § 201-2.

46.    Plaintiff purchased the Vehicle for personal, family, or household purposes.

47.    The UTPCPL defines unfair or deceptive acts or practices as, among other things, the following:

    a.  "The representation in an advertisement or sales presentation that a motor vehicle . . . [is] of a particular style, model, standard, quality or grade if they are of another . . . ." 37 Pa. Code § 301.2(5);

    b.  "The making of a representation or statement of a fact in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading or if the advertiser or salesperson does not have sufficient information upon which a reasonable belief in the truth of the representation could be based." 37 Pa. Code § 301.2(6);

    c.  "Representing that goods or services have . . . characteristics . . . uses, [or] benefits . . . that they do not have." 73 P.S. § 201-2(4)(v);

    d.  "Representing that goods or services are of a particular standard, quality or grade . . . if they are of another." 73 P.S. § 201-2(4)(vii); and

e. "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).

48.   Defendant's violated all the above sections through their misrepresentations and otherwise deceptive conduct.

49.   The salespersons, including but not limited to Jeffrey Swainbank, represented to Plaintiff that the Vehicle did not have any previous damage to it.

50.   The salespersons, including but not limited to Jeffrey Swainbank, represented to Plaintiff that the Vehicle was a good vehicle.

51.   The salespersons, including but not limited to Jeffrey Swainbank, never disclosed to Plaintiff that the Vehicle had different VINs.

52.   The salespersons, including but not limited to Jeffrey Swainbank, never disclosed to Plaintiff that the driver's side door of the Vehicle had been replaced.

53.   Specifically, Jeffery Swainbank told Plaintiff that the Vehicle was "all original and had undergone a front to back inspection."

54.   Jeffery Swainbank also stated that the Vehicle had no previous damage and no accidents.

55.    The Vehicle was also located in the showroom at J.D. Byrider as a prime vehicle.

56.    These representations, omissions, and misrepresentations were made during the sales presentation and/or advertisement of the Vehicle to Plaintiff.

57.    Discovering that the Vehicle had two separate VINs should have been uncovered during J.D. Byrider's inspection of the Vehicle prior to sale.

58.    Therefore, if the inspection of the Vehicle uncovered the differing VINs, J.D. Byrider made representations and statements that were false and misleading in violation of the UTPCPL.

59.    In the alternative, if J.D. Byrider failed to conduct an initial inspection of the Vehicle prior to sale, the salespersons did not have sufficient information to form a reasonable belief that their statements and representations were true in violation of the UTPCPL.

60.    Additionally, if J.D. Byrider failed to conduct an initial inspection of the Vehicle prior to sale, J.D. Byrider made statements and representations that were false and misleading in violation of the UTPCPL since Jeffrey Swainbank told Plaintiff that the Vehicle had undergone a front to back inspection.

61.    It is standard practice in the used car sales industry for dealerships to conduct a pre-sale inspection of a vehicle to determine if the vehicle is roadworthy and to ensure that accurate representations regarding the quality of the vehicle are made during the sales presentations and advertisements.

62.    Representing that the Vehicle did not have previous damage, was all original, that the Vehicle had no previous damage, that the Vehicle had no accidents, and that the Vehicle was a good vehicle is representing that the Vehicle was of a certain style, model, standard, quality or grade when the Vehicle was of another is a violation of the UTPCPL.

63.    Representing that the Vehicle did not have previous damage, was all original, that the Vehicle had no previous damage, that the Vehicle had no accidents, and that the Vehicle was a good vehicle is also a representation that the Vehicle was of a particular standard, quality or grade when it was of another.

64.    Advertising the Vehicle as a prime vehicle in the showroom is also a representation that the Vehicle is of a certain standard, quality, style, or grade when it is of another.

65.   J.D. Byrider engaged in deceptive conduct that created a likelihood of confusion or misunderstanding by failing to disclose that the Vehicle had two different VINs.

66.   J.D. Byrider also engaged in deceptive conduct that created a likelihood of confusion or misunderstanding by misrepresenting that the Vehicle had no previous damage.

67.   J.D. Byrider engaged in deceptive conduct that created a likelihood of confusion or misunderstanding by representing that the Vehicle was of a particular standard, quality, style, or grade when it was of another.

68.   J.D. Byrider engaged in deceptive conduct that created a likelihood of confusion or misunderstanding by representing that the Vehicle was all original when it was not.

69.   J.D. Byrider engaged in deceptive conduct that created a likelihood of confusion or misunderstanding by advertising the Vehicle as a prime vehicle in its showroom when it had different VINs and undisclosed damage.

70.   J.D. Byrider and/or CNAC also engaged in deceptive conduct that created a likelihood of confusion or misunderstanding by repossessing the Vehicle after Plaintiff was in default for one (1) day in retaliation for Plaintiff filing this lawsuit.

71.    J.D. Byrider and/or CNAC also engaged in deceptive conduct that created a likelihood of confusion or misunderstanding by repossessing the Vehicle when Plaintiff made the late payment on the Vehicle at or before the time of repossession.

72.    As a result of the above-described unfair and/or deceptive conduct, Plaintiff suffered an ascertainable loss in that the Vehicle's value was diminished, Plaintiff paid an inflated price for the Vehicle, Plaintiff received a vehicle that was not of the standard, quality, type, or grade that the Vehicle was represented to be, and Plaintiff was deprived of the use of the Vehicle.

73.    When Plaintiff was deprived of the use of the Vehicle, she was unable to pick up her sick children from school and/or daycare.

74.    73 P.S. § 201-9.2 provides that "[t]he court may, in its discretion, award up to three times the actual damages sustained" by Plaintiff or $100.00, whichever is greater.

75.    The Court may also award "to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees." 73 P.S. § 201-9.2.

**WHEREFORE**, Plaintiff demands judgment against J.D. Byrider for damages, costs and reasonable attorney's fees.

## Count II – Violation of TILA

76.     The foregoing paragraphs are incorporated herein by reference.

77.     J.D. Byrider is a *creditor* as defined by 15 U.S.C. § 1602(g).

78.     CNAC is a *creditor* as defined by 15 U.S.C. § 1602(g).

79.     Plaintiff is a *consumer* as defined by 15 U.S.C. § 1602(i).

80.     J.D. Byrider's sale of the Vehicle to Plaintiff was a *credit sale* as that term is defined by 15 U.S.C. § 1602(h).

81.     The disclosures required by TILA must be made "clearly and conspicuously in writing, in a form the consumer may keep." 12 C.F.R. § 226.17.

82.     TILA requires that the disclosures contain, among other things, the amount financed, an itemization of the amount financed, the finance charge, the interest rate, the total of payments, the fact that a creditor has or will take a security interest, and the annual percentage rate ("APR") for the loan. 12 C.F.R. § 226.18.

83.     The creditor does not have to disclose the APR if the finance charge would be $5.00 or less on an amount financed of $75.00 or less. 12 C.F.R. § 226.18(e).

84.     The creditor does not have to disclose the APR if the finance charge would be $7.50 or less on an amount financed of more than $75.00.

85.    In this case, the finance charge for the loan secured by the Vehicle was $5,681.71.

86.    The purchase price of the Vehicle was greater than $75.00.

87.    Therefore, J.D. Byrider and/or CNAC were required to provide TILA disclosures for the financing of the Vehicle.

88.    As described above, J.D. Byrider did provide TILA disclosures. *See* Exhibit A.

89.    APR discloses the cost of credit by expressing it as a yearly rate, that relates the amount and timing of value received by the consumer to the amount and timing of payments made. 12 C.F.R. § 226.22(a)(1).

90.    APR must be calculated in accordance with either the actuarial method or the United States Rule method. 12 C.F.R. § 226.22(a)(1).

91.    The creditor must disclose an accurate APR to comply with TILA.

92.    For the purposes of TILA, the APR disclosure is considered accurate if the disclosed APR is not more than 1/8 of one (1) percentage point above or below the correct APR as determined by TILA and Regulation Z.

93.    The APR disclosed by J.D. Byrider and/or CNAC was inaccurate.

94.    The APR disclosed by J.D. Byrider and/or CNAC was understated by 2.0967%.

95.   The APR disclosed by J.D. Byrider and/or CNAC was greater than 1/8 of one (1) percentage point lower than it should have been as determined by TILA and Regulation Z.

96.   The financing and sale of the vehicle was not an irregular transaction as defined by 12 C.F.R. § 226.22(a).

97.   As a result, J.D. Byrider and/or CNAC failed to comply with TILA's disclosure requirements in 15 U.S.C. § 1638 and TILA's implementing Regulation Z, 12 C.F.R. §§ 226.17, 226.18, 226.22.

98.   A violation of the disclosure requirements in TILA and its implementing Regulation Z is actionable under 15 U.S.C. § 1640.

99.   15 U.S.C. § 1640 provides that if any creditor fails to comply with the disclosure requirements of TILA, that creditor is liable to the consumer for any actual damages sustained, statutory damages in the amount of twice the finance charge, costs of the action, and reasonable attorney's fees.

100.  $11,363.42 is twice the finance charge for the loan secured by the Vehicle.

**WHEREFORE**, Plaintiff demands judgment against J.D. Byrider and/or CNAC for damages, costs, and reasonable attorney's fees.

### Count III – Violation of the Pennsylvania UCC

101. The foregoing paragraphs are incorporated herein by reference.

102. Division 9, 13 Pa.C.S. § 9101, *et seq.*, of the Pennsylvania Commercial Code governs secured transactions.

103. A security interest in the Vehicle was created in favor of CNAC.

104. CNAC was the *secured party* as that term is defined by 13 Pa.C.S. § 9102 when the Vehicle was repossessed.

105. The Vehicle was *collateral* as defined by 13 Pa.C.S. § 9102.

106. The Vehicle was purchased primarily for personal, family, and household purposes.

107. The Vehicle is a *consumer good* as defined by 13 Pa.C.S. § 9102.

108. After default, a secured party may take possession of collateral. 13 Pa.C.S. § 9609.

109. However, the secured party must proceed in a commercially reasonable manner. 13 Pa.C.S. § 9607(c).

110. It is not commercially reasonable to repossess a vehicle after one (1) day of default.

111.  It is not commercially reasonable to repossess a vehicle after one (1) day of default as retaliation for notifying a party about an impending lawsuit.

112.  It is not commercially reasonable to repossess a vehicle after one (1) day of default without attempting to contact the consumer to see if they intend to make the payment.

113.  It is not commercially reasonable to repossess a vehicle after one (1) day of default when the consumer made the late payment at or before the time of repossession.

114.  CNAC and/or J.D. Byrider did not proceed in a commercially reasonable manner when it repossessed the Vehicle after Plaintiff was one (1) day in default.

115.  CNAC and/or J.D. Byrider did not proceed in a commercially reasonable manner when it repossessed the Vehicle after Plaintiff was one (1) day in default as retaliation of notifying J.D. Byrider of an impending lawsuit.

116.  CNAC and/or J.D. Byrider did not proceed in a commercially reasonable manner when it repossessed the Vehicle after one (1) day of default when Plaintiff made the late payment at roughly the same time or before the Vehicle was repossessed.

117.  CNAC and/or J.D. Byrider did not proceed in a commercially reasonable manner when it repossessed the Vehicle after one (1) day of default without notifying Plaintiff of the late payment or inquiring into whether she intended to make the payment.

118.  A secured party is liable in damages for failing to comply with Division 9 of the Pennsylvania Uniform Commercial Code in the amount of any loss caused by the failure to comply including, but not limited to, loss resulting from the debtor's inability to obtain or increased costs of alternative financing. 13 Pa.C.S. § 9625(b).

119.  13 Pa.C.S. § 9625(c) provides for statutory damages in an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price if a secured party fails to comply with Division 9 of the Pennsylvania Commercial Code.

120.  The credit service charge for the financing of the Vehicle was $5,681.71.

121.  The principal amount of the obligation was $12,097.70.

122. Therefore, Defendants are liable to Plaintiff for statutory damages in an amount not less than $6,891.48.

**WHEREFORE**, Plaintiff demands judgment against Defendants for

damages and costs.

### *Count IV – Conversion*

123.   The foregoing paragraphs are incorporated herein by reference.

124.   J.D. Byrider intentionally deprived Plaintiff of her rightful possession of the Vehicle without Plaintiff's consent by taking the Vehicle when J.D. Byrider had no right to do so.

125.   Plaintiff had rightful possession of the Vehicle at the time it was illegally taken by J.D. Byrider.

126.   Plaintiff had an immediate right to possession of the Vehicle at the time that J.D. Byrider caused it to be taken.

127.   The conduct of J.D. Byrider in causing the Vehicle to be unlawfully taken was outrageous.

128.   Defendants' outrageous conduct was magnified since the repossession of the Vehicle was in retaliation for the pre-suit demand letter Plaintiff sent to J.D. Byrider.

129.   Defendants' outrageous conduct was magnified since Plaintiff was deprived of her use of the Vehicle and could not pick up her sick children from school and/or daycare.

**WHEREFORE**, Plaintiff demands judgment against J.D. Byrider for actual damages and punitive damages.

## V.    Demand for Jury Trial

130.  Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants for

    a.  Actual damages;

    b.  Punitive damages;

    c.  Statutory damages;

    d.  Attorney's fees;

    e.  Costs;

    f.  Interest; and

    g.  Any further relief that the Court deems just and proper.

Respectfully Submitted,


*s/ Leonard Gryskewicz, Jr.*
Leonard Gryskewicz, Jr.
Attorney for Plaintiff
PA321467
Lampman Law
2 Public Sq.
Wilkes-Barre, PA 18701
Phone: (570) 371-3737
Fax: (570) 371-3838